## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

OTIS REDMON,                           :
                                       :
     Plaintiff,                     :
                                       :
v.                                     :          CASE NO.: 7:19-CV-125 (WLS-TQL)
                                       :
RALPH SHROPSHIRE, *et al.*,            :
                                       :
     Defendants.                    :
_____ :

### ORDER

Before the Court is a Recommendation from United States Magistrate Judge Thomas Q. Langstaff filed on January 12, 2022. (Doc. 43.) Therein, Judge Langstaff recommends that Defendant Ford's Motion for Summary Judgment (Doc. 36) be granted but that the Motion for Summary Judgment filed by Defendants Shropshire, Pineiro, Allen, and Miles (collectively, the "Supervisory Defendants") be denied. Despite being granted an extension of time to respond and being noticed of the consequences of failing to respond, Plaintiff filed no response to the Motions for Summary Judgment. Nonetheless, Judge Langstaff's review of the allegations and record in this case led him to conclude that the Supervisory Defendants are not entitled to summary judgment. The Supervisory Defendants timely filed an Objection. (Doc. 44.) Plaintiff filed no objection. As such, the Court has conducted a *de novo* review of the portions of the Recommendation to which a proper objection was made. Fed.R.Civ.P. 72(b)(3). The Court has reviewed all other findings in the Recommendation for clear error and manifest injustice. *United States v. Aponte*, 461 F. App'x 828, 830 n.2 (11th Cir. 2012).

### I.    PROCEDURAL HISTORY

Plaintiff brought this action *pro se* on August 12, 2019, alleging that he was sprayed in the face with a "riot size can of mace without warning" and that he was then placed in a cell without water for more than twenty hours. (Doc. 1 at 5-6.) Plaintiff alleged two claims: Eighth Amendment excessive force against Ford and Eighth Amendment deliberate indifference against the Supervisory Defendants. *Id.* at 5, 7. Attached to his Complaint were portions of

the Georgia Department of Corrections' ("GDC") Standard Operating Procedures ("SOP") and two signed declarations.[1] Thereafter, Plaintiff filed a motion to amend which included a First Amended Complaint containing additional allegations that Defendants maintained a policy, practice, or custom of using pepper spray or MK-9 in violation of GDC's SOP and prisoners' constitutional rights. (Doc. 17.) The First Amended Complaint also made these allegations against new defendants, but the Court adopted the Recommendation to dismiss the allegations of a policy, custom, or practice, and Plaintiff did not object to any findings in the Recommendation. (Doc. 27.) Thus, remaining in this case are Plaintiff's liberally construed Eighth Amendment claims for excessive force against Ford and the Supervisory Defendants.[2]

Discovery closed on May 14, 2021 (Doc. 33), and dispositive motions were due by July 14, 2021 (Doc. 35). Ford filed a motion for summary judgment with attachments on June 4, 2021. (Doc. 36.) Plaintiff was noticed to respond to the motion within thirty days and of the consequences of failing to respond (Doc. 37), but no response was filed. On July 14, 2021, the Supervisory Defendants filed a motion for summary judgment with attachments. (Doc. 39.) Plaintiff was again noticed to respond to the motion within thirty days and of the consequences of failing to respond (Doc. 40). Approximately thirty days later, Plaintiff filed a Motion for Extension of Time to Respond to both summary judgment motions. (Doc. 41.) Judge Langstaff granted the motion and gave Plaintiff until September 17, 2021 to file a response to the summary judgment motions. (Doc. 42.) Plaintiff filed no response to the motions, and thereafter, Judge Langstaff issued the pending Recommendation to grant Ford's summary judgment motion and to deny the Supervisory Defendants' summary judgment motion. (Doc. 43.) Plaintiff filed no objection, but the Supervisory Defendants objected, arguing that by failing to respond, Plaintiff failed to establish a genuine issue of material fact to be tried and that there is no evidence that the Supervisory Defendants acted maliciously and sadistically to cause harm. (Doc. 44). The Supervisory Defendants then also filed a Motion

---

[1] Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

[2] Judge Langstaff concluded that the claim against the Supervisory Defendants is more properly considered a claim of excessive force because Plaintiff does not allege facts of a risk of serious harm, only the continued infliction of pain after he was sprayed and not able to decontaminate. (Doc. 6 at 5 n.2). Plaintiff has not challenged Judge Langstaff's construction of this claim, and the Court does not find the construction clearly erroneous although case law has treated such claims as deliberate indifference claims. *See* infra pp. 12-13.

to Dismiss based on Plaintiff's failure to prosecute this action, which remains pending with Judge Langstaff. (Doc. 45.)

## II.   SUMMARY JUDGMENT STANDARD

### A.  Federal Rule of Civil Procedure 56

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 F. App'x 842, 846 (11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). " 'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.' " *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts.' " *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the non-movant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting

*Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587-88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**B. Local Rule 56**

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, Defendants properly filed a summary judgment motion with a Statement of Undisputed Material Facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (*See* Docs. 36-2 & 39-1.)[3] Plaintiff filed no response thereto. Thus, only the Defendants complied with the Local Rule's requirement on statements of fact. Having established the applicable standards, the Court will proceed to the facts.

**III.    RELEVANT FACTUAL BACKGROUND**

The following facts are derived from the initial Complaint and Amended Complaint (Docs. 1 & 17-1); Defendants' Answer to the initial Complaint (Doc. 16);[4] Defendants'

---

[3] Plaintiff has recently stated that the pandemic "has severely impacted access" to the law library, limiting his ability to respond timely. (Doc. 47 at 2.)

[4] Only Plaintiff's Eighth Amendment claims against Ford and the Supervisory Defendants were allowed to proceed because the general claims of unconstitutional customs and policies were deemed too vague and conclusory to survive. (*See* Docs. 19 & 27.) Thus, the Court will only consider the Amended Complaint's allegations as to the Eighth Amendment claims against the Defendants that were allowed to proceed.

Statements of Undisputed Material Facts (Docs. 36-2 & 39-1); and the record in this case, all of which is construed in a light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Matsushita*, 475 U.S. at 587-88. The only evidence submitted by the Defendants in support of their motions for summary judgment is a transcript of Plaintiff's deposition on May 6, 2021. (Doc. 39-3.) There are no affidavits or other discovery materials on file.

Plaintiff Otis Redmon is a prisoner at Valdosta State Prison ("VSP") and brings suit against Defendants Deputy Warden of Care and Treatment Aaron Pineiro, Deputy Warden of Security Ralph Shropshire, Unit Manager Captain Clyde Allen, Captain Jimmy Miles and Defendant CERT Officer Brian Ford for violations of the Eighth Amendment. (Docs. 1 & 17.) Plaintiff alleges that on June 11, 2019, his door flap was opened by store personnel Ms. Henry, and that after he signed for his items, Ms. Henry told him to wait and he never received his items. (Docs. 17-1 at 7.) He alleges that the Supervisory Defendants and CERT team then arrived, and when they came to close Plaintiff's door flap, he asked to speak to a supervisor so that he could obtain the items he had signed for. *Id.* at 7-8. Plaintiff asserts that he had to immediately report the store discrepancy; otherwise, it would be denied later. *Id.* at 8. He asserts that Ford then yelled "Get the fuck off the flap" and sprayed MK-9 in Plaintiff's face without warning and that Plaintiff closed the flap after being asked to do so. *Id.* Defendants admit that Shropshire and Allen were present when this occurred and that Ford "discharged pepper spray in a justified use of force after Plaintiff refused several orders to remove his arm from the cell tray flap." (Doc. 16 ¶ 13.) Plaintiff asserts that he was not posing a threat and that use of force was not necessary. (Doc. 17-1 at 8.)

Plaintiff alleges that after he was sprayed, he was handcuffed and taken to another cell without running water and placed on strip-cell status, where he was left for more than twenty hours without being able "to wash his burning eyes and skin." (Doc. 17-1 at 9.) Plaintiff alleges that he was not evaluated by medical at eight-hour intervals and that his skin and eyes burned constantly for at least ten hours and then frequently burned thereafter. *Id.* He asserts that Defendants were aware that he is an asthmatic and that he suffered mental anguish and suicidal thoughts as a result of this experience. *Id.* He alleges that he filed a grievance, which was administratively closed and forwarded to the Criminal Investigations Division, but that he was never interviewed about it and that no one viewed the surveillance footage. *Id.* at 9-10.

5

Defendants admit that Plaintiff was placed on strip-cell status after he was sprayed, but they otherwise deny Plaintiff's allegations, and they deny that they violated the Constitution or laws of the United States.

Plaintiff asserts that Ford's conduct constituted excessive force and that the Defendants' failure to allow Plaintiff to decontaminate after he was sprayed with chemical agents also violates the Eighth Amendment. (Doc. 17-1 at 10.) Plaintiff seeks declaratory relief, injunctive relief, and damages. *Id.* at 10-11; Doc. 1 at 6.

Plaintiff's deposition testimony was largely, although not entirely, consistent with his allegations in the Complaints. Plaintiff had been in a lockdown segregation cell for more than a year as of June 2019, but he had been an inmate at VSP since 2014. (Doc. 39-3 at 10-11, 17-18.) He has been receiving mental health treatment for the last seven to eight years and has a diagnosed mental health condition. *Id.* at 12-13.[5] Plaintiff testified as to the incident that Ms. Henry opened his door flap, he signed a receipt for the commissary items he purchased, but Ms. Henry said to hold on and she left to handle an issue that had occurred downstairs. *Id.* at 21-24. Ford was the first officer to come up the stairs, and as Ford approached to close the flap on Plaintiff's cell door, Plaintiff's cell mate had his arms out of the door flap and told Ford that Plaintiff didn't receive his store items. *Id.* at 29-32. Ford put his riot-sized can up to the door flap and told the cellmate to get off the flap, and then Plaintiff approached and put his arm through the flap and repeated that he had signed for his items but didn't receive them and that he would like to speak to a supervisor. *Id.* at 32-37, 87. Plaintiff testified that Ford then said, "Shut the fuck up, get off the flap." *Id.* at 36. Plaintiff then asked again to speak to a supervisor and, without further warning, Ford sprayed Plaintiff directly in the face. *Id.* at 33, 36-37. According to Plaintiff, "[a]ll this happened in five or ten seconds, ten or fifteen seconds, at the most." *Id.* at 37. Plaintiff could not see, and the next thing he remembers is that he was being asked to "cuff-up" and other officers cuffed him and escorted him out of the building. *Id.* at 38-39.

---

[5] Plaintiff was on medication for his mental health condition until the COVID-19 pandemic started, after which he did not want to leave his dorm to get the medication. *Id.* at 14. As such, Plaintiff was not on medication at the time of the deposition. *Id.*

Plaintiff testified that approximately ten minutes later, a nurse saw him outside, but that she merely asked if he was okay, he responded "no," and she left as he was saying that his rights had been violated. (Doc. 39-3 at 40-43). He was not decontaminated with water or allowed to rinse out his eyes, and he could not control the snot coming out of his nose. *Id.* at 40-43. Plaintiff testified that Defendant Shropshire was there holding a camera, and that Defendant Allen and another CERT officer escorted him to a single cell. *Id.* at 43-44. Plaintiff was placed in a bare strip cell where there was a sink and a toilet, but the sink was not working. *Id.* at 45-46. He was in the cell for approximately twenty-four hours with no access to water and only allowed to shower the next morning on "shower day." *Id.* at 46-49. He said that while he was in the cell, he yelled to the officer asking for water, but she told him that she was told not to give him anything. *Id.* at 49. Plaintiff was served a meal with milk, but he did not use the milk to rinse his eyes because he did not think that would work. *Id.* at 93-94.

As to the effects of the spray, Plaintiff testified that he was in pain, he could not see for hours, his face swelled up, and he had shortness of breath. (Doc. 39-3 at 50.) He said the pain in his eyes went away after nine or ten hours but that his skin burned until the next day when he was able to shower. *Id.* at 50-51. Plaintiff felt fine after he showered, but he felt suicidal for months afterwards and spoke to his counselor about it. *Id.* at 51-52; 94-95. He did not otherwise seek medical care after this incident. *Id.* at 96-97.

Plaintiff further testified that the Supervisory Defendants were not present when he was sprayed, but that Defendant Captain Miles is a supervisor and arrived within seconds afterwards. (Doc. 39-3 at 60-61.) He also testified that each of the Supervisory Defendants were present when he was in the yard after being sprayed, and that they observed the "two-second medical attention" where the nurse asked if he was alright, and he responded "no," and she left. *Id.* at 64. They then decided to move him to a single cell, and Unit Manager Smith commented that the Supervisory Defendants should put him in the shower, but Plaintiff was not decontaminated with water. *Id.* Defendant Allen and CERT Officer Williams were present when Plaintiff was put into the single cell. *Id.* at 66.

## IV.   DISCUSSION

### A.  Defendant Ford's Motion for Summary Judgment

Defendant Ford moved for summary judgment on Plaintiff's Eighth Amendment claim of excessive force, arguing that he used force in a good faith effort to make Plaintiff comply with his lawful instructions and that because there is no binding precedent clearly establishing that Ford's actions were unconstitutional, he is entitled to qualified immunity. (Doc. 36-1.) Considering the relevant legal factors and the record, Judge Langstaff concluded that there was no genuine issue of material fact as to whether there was an Eighth Amendment violation. (Doc. 43 at 11-12.) Plaintiff filed no objection.

"In general, prison officers are authorized to use force when a prisoner repeatedly fails to obey an order[,]" and they need not "convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (citing *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)). Furthermore, pepper spray "is an accepted non-lethal means of controlling unruly inmates[,]" and "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Danley*, 540 F.3d at 1307 (citing cases). The record does not reflect how long Ford sprayed Plaintiff, but Plaintiff testified that Captain Miles arrived within ten to fifteen seconds after Ford sprayed him. (Doc. 39-3 at 60-61.) Thus, the record does not establish that Plaintiff was sprayed for an unconstitutionally excessive period of time.[6] Plaintiff also suffered no lasting or serious physical injuries, which supports a conclusion that the amount of force used was not excessive. *See Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) ("The extent of injury remains a relevant consideration and may provide an indication of the amount of force applied, but '[i]njury and force are only imperfectly correlated, and it is the latter that ultimately counts.'"). And although Plaintiff alleges that he was sprayed with a riot-size can, the record clearly establishes that Plaintiff refused to comply with Ford's lawful instructions despite seeing Ford display the can of pepper spray and hearing Ford twice

---

[6] *Cf. Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (finding the force used "grossly disproportionate" where jailer sprayed prisoner in his cell "for at least 60 seconds, causing him to vomit mucus and blood and to lose consciousness" and then sprayed the prisoner again when the prisoner was having difficulty standing to comply with the instructions).

instruct Plaintiff and his cellmate to get out of the door flap. Further, Ford did not leave Plaintiff to linger in the pepper spray; Plaintiff was promptly ordered to "cuff up" so that he could be taken outside to see the nurse.[7]

Even if Ford's conduct constituted an Eighth Amendment violation, because it is not clearly established and a reasonable jailer might not be on notice that the force used under these circumstances was unconstitutional, Ford is entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (citation omitted); *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.") (citation and internal quotation marks omitted). Thus, the Court finds no clear error in the magistrate judge's recommendation to grant Ford's summary judgment motion.

### B. Supervisory Defendants' Motion for Summary Judgment

The Supervisory Defendants argue in their Objection that the uncontroverted material facts in their statement of fact were deemed admitted and that their summary judgment motion was unopposed. (Doc. 44 at 2-3.) Thus, they argue that Plaintiff failed to meet his burden of producing evidence of a genuine issue of material fact to be tried and that they are entitled to judgment as a matter of law. *Id.* at 3. They also argue that: the evidence does not show that they acted "maliciously and sadistically for the purpose of causing harm" because the Magistrate Judge improperly relied on hearsay, there is no evidence that the Supervisory Defendants were aware of the effects of the pepper spray on Plaintiff, and there is no evidence they acted with malicious intent. *Id.* at 3-7. They further argue that Plaintiff's testimony is that only Defendant Allen was present when Plaintiff was escorted to a new cell, contrary to the Recommendation's finding. (Doc. 44 at 7) (citing Doc. 43 at 16.)

---

[7] *Cf. Odom v. Jasper Cty.*, No. 5:14-CV-22 (CAR), 2016 U.S. Dist. LEXIS 41504, at *30 (M.D. Ga. Mar. 29, 2016) (denying motion for summary judgment where jailer sprayed pepper spray under the door but not "to make Plaintiff comply with his orders" because the prisoner was secured behind a closed door and not failing to obey instructions); *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (citing cases where "sister circuits have approved the use of mace in small quantities to control a 'recalcitrant inmate'"). Plaintiff has made no allegations against Ford as to the failure to decontaminate.

It is well-settled that "in the context of an unopposed motion for summary judgment that 'the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.'" *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (quoting *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004)). The movant "*always* bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the record] which it believes demonstrate[] the absence of a genuine issue of material fact." *Id.* at 1268 (quoting *Celotex Corp.*, 477 U.S. at 323. "[T]he movant is not 'absolved. . . of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.'" *Id.* (citation omitted). "Therefore, if evidentiary materials submitted with Defendant's motion for summary judgment conflict with factual allegations in its statement of undisputed material fact, or are not supported by the record, even if the non-movant has not responded, the Court is under no obligation to accept such allegations as true." *Reid v. Hasty*, No. 1:07-CV-2475-ODE/AJB, 2009 U.S. Dist. LEXIS 151346, at *3 (N.D. Ga. Nov. 5, 2009).[8]

Here, the evidence submitted by the Defendants and viewed in the light most favorable to Plaintiff establishes that after Plaintiff was pepper sprayed, he informed a nurse that he was not okay in the presence of the Supervisory Defendants, the nurse merely walked away without providing any medical care or decontamination, and Plaintiff was then placed in a cell with no running water, where his eyes and skin continued to burn. (Doc. 39-3 at 29-44, 64.) Plaintiff testified that he asked for water but was not given water and was not allowed to shower until the next day. *Id.* at 40-49. Furthermore, Plaintiff attached to his Complaint an affidavit signed under penalty of perjury by Daniel Boatwright, an "orderly," who stated that he observed Plaintiff after he was sprayed and placed into the cell and who declares that Plaintiff was screaming for water and that Plaintiff screamed "[f]or hours [that] his water in his cell doesn't [sic] work" but that Plaintiff was not able to rinse his eyes or take a shower until the next day.

---

[8] Indeed, the Local Rules provide that "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D.Ga. L.R. 56 (emphasis added).

(Doc. 1-4.) A Plaintiff need not offer more than his own plausible testimony to create a dispute of fact at this stage. *Sears v. Warden Okeechobee Corr. Inst.*, No. 18-13423, 2019 U.S. App. LEXIS 7090, at \*14-15 (11th Cir. Mar. 11, 2019) ("[T]he self-serving nature of [Plaintiff's] sworn statements do not preclude those statements from creating a genuine dispute of material fact.").

The Supervisory Defendants argue that there is no evidence that they were aware of the lingering effects of pepper spray on Plaintiff or that Plaintiff was in pain. (Doc. 44 at 4-6.) But Plaintiff testified that the Supervisory Defendants were present as he waited outside for approximately ten minutes for the nurse to come, that Plaintiff could not see or control the snot coming out of his nose, and that Plaintiff told the nurse that he was not okay, and each of the Supervisory Defendants were present when someone decided that Plaintiff should then be moved to a single cell (rather than be decontaminated with water). *Id.* at 40-44, 64. Plaintiff testified that no one provided Plaintiff any water, even though Unit Manager Smith suggested that they "should put him in the shower." *Id.* at 64. Although Defendants argue that Smith's statement is hearsay, there are numerous exceptions to the hearsay rules, and this statement is possibly admissible.

Further, it was well-established at the time that "[p]epper spray is 'designed to disable a suspect,' [] by causing 'intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx," and sometimes "'disorientation, anxiety, and panic.'" *Danley*, 540 F.3d at 1309. Because of the effects of pepper spray, it is no surprise that GDC's SOP on chemical agents such as pepper spray provide that anyone exposed directly or indirectly to chemical agents "shall be decontaminated" which "shall include:" "[t]he resin shall be removed from the skin by placing the offender under running cold water as soon as possible[;]" "give the offender a wet paper towel to press on the face. . .;" "flush eyes liberally with cool water," and "[i]ndividuals exposed to chemical agents shall be examined by the medical staff as soon as practical and monitored until no further effects or symptoms remain." (Doc. 1-3.) At least one Supervisory Defendant, Allen, was present when Plaintiff was taken to the cell without first being given water, and although Plaintiff screamed for hours for water and complained that there was no running water in his cell, other officers were instructed not to provide him water,

and Plaintiff was not provided any water until the next day. (Doc. 39-3 at 66; Doc. 1-4.) At the summary judgment stage, the Court cannot "weigh[] the evidence and reach[] factual inferences contrary to competent evidence," but must draw all "reasonable inferences in favor of the nonmoving party." *Tolan v. Cotton*, 572 U.S. 650, 660 (2014)). A reasonable factfinder construing the facts in the light most favorable to Plaintiff could conclude that (1) the Supervisory Defendants were aware that Plaintiff was in pain and experiencing lingering effects of being pepper sprayed and (2) their conduct constituted an Eighth Amendment violation. *See Danley*, 540 F.3d at 1311-12.

The "core judicial inquiry" for an excessive-force claim is not without context but is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). In other words, "[o]nce a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need." *Danley*, 540 F.3d at 1309. The Eleventh Circuit has "identified five factors to help evaluate whether force was applied maliciously or sadistically: . . . (1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to that official; and (5) any efforts made to temper the severity of the use of force." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Danley*, 540 F.3d at 1307). Consideration of these factors falls in Plaintiff's favor. Here, Plaintiff informed the nurse in the Supervisory Defendants' presence that he was not okay as he physically exhibited lingering effects of being sprayed, and there is no evidence that after Plaintiff was pepper sprayed and handcuffed that there was any continued need for force to maintain or restore discipline. Thus, a reasonable factfinder could conclude that the Supervisory Defendants acted maliciously and sadistically to cause harm when they failed to provide Plaintiff any water until approximately twenty-four hours after he was pepper sprayed. *See, e.g., Danley*, 540 F.3d at 1312 (finding no error in denial of qualified immunity to jailers who provided inmate a two-minute shower after he was pepper sprayed despite his complaints of pain and their inferred knowledge of the prison's decontamination procedures).

For the same reasons, the Supervisory Defendants are not entitled to qualified immunity at this stage because the Supervisory Defendants were on notice that the failure to decontaminate Plaintiff as alleged could constitute an Eighth Amendment violation. *See, e.g.*, *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) ("[P]rison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain."); *Danley*, 540 F.3d at 1311 (finding that serious medical needs can arise from "the effects of prolonged exposure to pepper spray with inadequate decontamination"); *McNeeley v. Wilson*, 649 F. App'x 717, 723 (11th Cir. 2016) (Defendants "were on notice that delaying a proper decontamination for over twenty minutes despite complaints about the effects of pepper spray could result in a clearly established constitutional violation").[9]

## CONCLUSION

Accordingly, upon full review and consideration of the record, the Court finds that the Recommendation (Doc. 43) should be, and hereby is, **ACCEPTED**, **ADOPTED** and made the Order of this Court for reason of the findings made and reasons stated therein, together with the findings made and conclusions reached herein. The Supervisory Defendants' Objection (Doc. 44) is **OVERRULED**. Defendant Ford's Motion for Summary Judgment (Doc. 36) is **GRANTED**, and the Supervisory Defendants' Motion for Summary Judgment (Doc. 39) is **DENIED**. This case will be noticed for trial separately.

**SO ORDERED**, this 23rd day of February 2022.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[9] The Eleventh Circuit has also explained that pepper spray can have significant psychological impacts on mental health inmates, and that "[t]he case law establishes that 'mental health needs are no less serious than physical needs' for purposes of the Eighth Amendment." *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) (citation omitted).